JONES, Appellant, vs. THE TOWN OF LIND, Respondent.

*February 3 — February 24, 1891.*

*Towns: Liability for medical services to pauper.*

In an action by a physician to recover from a town for medical services rendered to paupers under contract with its supervisors, where the plaintiff testified that he attended such paupers and furnished them medicines under contract with the board of supervisors of the preceding year, until notified to stop by their successors in office, and such supervisors testified that they made no contract extending beyond their term of office, and that the plaintiff understood the contract to be so limited, *held*, that plaintiff could not recover for services rendered after the expiration of the term of office of the supervisors with whom he contracted.

APPEAL from the Circuit Court for *Waupaca* County. The case is sufficiently stated in the opinion.

It was submitted for the appellant upon the brief of *A. L. Hutchinson*, and for the respondent upon that of *John Fordyce.*

TAYLOR, J.   This action was commenced in justice's court to recover for medicines and medical attendance furnished for a man by the name of Martin and his family.   These persons were poor persons, residing in said town of Lind. The defendant town denied all liability.   On the trial in justice's court the plaintiff recovered.   The town appealed to the circuit court, and, the judgment being for less than $15, the case was tried in that court upon the evidence returned by the justice.   The circuit court rendered judgment in favor of the town, reversing the judgment of the justice on the ground that the evidence did not support the judgment.   The plaintiff appeals, and alleges that the circuit court erred in deciding that there was no evidence to support the judgment of the justice.

The evidence in the case is very brief, and upon reading the same we are of the opinion that the circuit court was justified in holding that the evidence found in the record did not support the judgment in favor of the plaintiff.   On the trial in the justice's court the plaintiff, in his own behalf, testified in regard to the contract under which his services were performed and medicine furnished, as follows:   He says:  " I have performed professional services for the town of Lind.   They were performed under the following agreement:  That I should attend the family of William Martin, then living at Evanswood, whenever they were in need of medical attendance; that I was to make a monthly report to the chairman of Lind whenever I had done any business the preceding month for that family, until I was notified to stop."   " This agreement was made with Hollis Gibson, at that time chairman of Lind.   This agreement was made in April, 1888.   All his bills for the year 1888 were

paid by the town. The attendance and medicines for which the action was brought, were furnished in 1889." Hollis Gibson was called as a witness for plaintiff, and he testified: "We [meaning the supervisors] made no agreement to extend the contract beyond our term of office. Just before our term expired, I asked him to present his bill, so we could settle up." He also says: "Plaintiff rendered his bills from time to time,— the last one in March,— and we paid them." On cross-examination he said: "We made no contract to extend beyond our term of office. We understood our contract terminated when we settled up with plaintiff." This is all the evidence as to the contract given by the plaintiff. On the part of the defendant, Milo Rice testified: "I was supervisor of Lind in 1888 and 1889, and was appointed to close up the contract with plaintiff. I tried first to make a bargain with him to furnish the year for a set sum. He would not do it. So we agreed to have him furnish attendance and medicine for the Martin family, and make monthly reports. The contract was to end with our term of office. *Mr. Jones* understood it was to end with our term. Our term of office ended in April, 1889." On cross-examination he says, among other things, that "nothing was said about the contract lasting till *Jones* was notified to the contrary. We never did notify plaintiff to discontinue his services. I informed my successor in office that the contract terminated with our term of office."

There is no claim made that the evidence shows any contract made with the town board for 1889 and 1890. There does not seem to us to be any conflict of evidence as to what the real contract between the town and plaintiff was, as made in April, 1888. It is true, plaintiff says the contract was to continue until notified to stop. This is not inconsistent with the positive evidence that the contract was limited to the time the officers making the same continued in office. As the officers making the contract were officers

whose term would end within a year from the time the contract was made, it is reasonable that they should limit the contract to the term of their offices. It may also be that the officers reserved to themselves the right to discontinue the plaintiff's services any time during their term of office. It will be observed that, although the plaintiff was recalled as a witness in his own behalf after the witnesses for the town had testified, he did not, in any way, contradict the statements of the witnesses for the town that the contract was to extend and be effective only during their terms of office. As the town can only be chargeable for the services rendered by virtue of some contract made with its officers for such services, we think the circuit court was clearly justified in reversing the judgment of the justice.

*By the Court.*— The judgment of the circuit court is affirmed.